CASEY S. MURDOCK, OSB NO. 144914
Murdock@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO, & MCGOVERN, P.C.
2592 East Barnett Road
Medford, OR 97504
Telephone:   (541) 779-2333
Facsimile:   (541) 779-6379
     Of Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| ADAM GILLIAM, | Case No.: 6:25-cv-00492-MTK |
| Plaintiff, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DANIEL C. MILLER, | FRCP 56; LR 56; LR 7 |
| Defendant. | **(Oral Argument Requested)** |

**LR 7-1**

The undersigned certifies that he conferred via telephone with plaintiff's counsel, Marianne Dugan, regarding the following motion and no resolution was reached. Defendant anticipates requiring approximately thirty (30) minutes for oral argument on this motion. Court reporting services are not requested.

**MOTION**

Pursuant to FRCP 56, Defendant moves for summary judgment in his favor on plaintiff's

Page 1 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

claims against him. This motion is supported by the pleadings on file, along with the following facts, declarations, and legal memorandum.

## OPERATIVE CLAIMS

Plaintiff, Adam Gilliam, filed his Complaint on March 24, 2025. *ECF No. 1*. Plaintiff alleges claims under the Fourth Amendment and Fourteenth Amendment for false arrest/unlawful detention against Sgt. Daniel Miller, from the Coburg Police Department. *ECF No. 1, pp. 3-4*. He also asserts an Equal Protection claim against Sgt. Miller under the Fourteenth Amendment.

## FACTUAL BACKGROUND

This case arises from an investigatory detention that occurred on March 25, 2023, after Coburg police dispatch reported that a man was "chasing and threatening" a resident with a weapon. *Police Report* (Ex 1), p. 1.

Plaintiff, Adam Gilliam, went to Simon Gayles's house to get money that Gayles owed to Gilliam's girlfriend. She had paid Gayles to perform flooring work and Gayles never performed the work. Gilliam was upset when he arrived on scene. *Gilliam Depo*. (Ex. 2), p. 8.[1] Gayles's excuse was that he used all the money to get high and party. *Id.* at p. 5. During that exchange, Gayles left to call police and whispered that there was a male threatening him with a gun. *Miller Depo.* (Ex. 3), p. 17.

Sgt. Daniel Miller, the only Coburg officer on duty, responded to the call. Based on the emergent nature of the report, he believed he had reasonable suspicion and probable cause that Plaintiff had committed a crime. *Ex. 3,* p. 7, p. 19. More specifically, he had reasonable suspicion

---

[1] Page references relate to the exhibit numbering on the bottom-right, rather than the page of the deposition transcript on the top-right.

Page 2 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

that the following crimes were committed and/or were in-progress: Menacing, Unlawful Use of a Weapon, Disorderly Conduct, Harassment, Robbery, and Burglary. *Id.* at p. 20. Upon arrival, Sgt. Miller deployed his M4 rifle for tactical advantage, ordered Plaintiff Adam Gilliam to kneel and walk backward, and Gilliam complied fully. *Id.* at 6. Officers then handcuffed Gilliam, conducted a pat-down that revealed no weapons, and placed him in a patrol car while Sgt. Miller investigated the complaint. *Id.* at p. 19; *Ex. 1,* pp. 3-4.

During the investigation, Sgt. Miller interviewed the complainant, interviewed Gilliam, spoke with a neighbor, attempted contact with Gayles's mother, and addressed a bystander who was filming the scene. *Ex. 3,* p. 14; *Ex. 1*, pp. 3-4. After completing these steps, Sgt. Miller concluded that probable cause to arrest Gilliam did not exist. *Ex. 3,* pp. 15-16; *Ex. 1,* p. 4. Gilliam was released without arrest, and Sgt. Miller documented his findings and referred Gayles - the complainant - for possible prosecution for initiating a false report. *Ex. 1,* p. 5. The investigation lasted approximately one hour. *See ECF No. 1,* ¶ 27.

These facts demonstrate that the detention was a lawful *Terry* stop, reasonable in scope and duration, and that Sgt. Miller acted without discriminatory intent. They also establish that Sgt. Miller is entitled to qualified immunity. Summary judgment should issue in Defendant's favor.

## STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must present specific facts showing a genuine issue for trial; mere allegations or speculation are insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Page 3 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

## LEGAL MEMORANDUM

Plaintiff's claims arise out of his belief that he was detained too long while Sgt. Miller investigated a potential armed robbery. He alleges that, although some investigation was reasonable, Sgt. Miller's investigation lasted three to five minutes too long. His second-guessing Sgt. Miller's professional conduct is unfounded. Sgt. Miller is entitled to summary judgment in his favor.

**I.     Plaintiff's First Claim Fails Because the Detention Was Lawful.**

Sgt. Miller responded to a volatile situation and conducted an investigative *Terry* stop to enable a safe and efficient inquiry. He possessed reasonable suspicion that a crime was committed throughout that time. Even if the court determines that the detention transitioned to an arrest, probable cause existed until the known witness interviews were completed.

**A.  The Detention was a *Terry* Stop**

Under *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), an officer may briefly detain an individual when specific, articulable facts create reasonable suspicion of criminal activity. Here, dispatch reported an armed threat, and Sgt. Miller confirmed the address was associated with Gayles, a person he knew from prior police contacts. Sgt. Miller testified that he believed he had reasonable suspicion and even probable cause based on the information relayed. *Ex. 3*, p. 18 line 21- p. 19 line 4.

The investigative measures Sgt. Miller employed were reasonable under the circumstances, consistent with Supreme Court precedent establishing that, "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion." *Florida v. Royer*, 460 U.S. 491, 501 (1983). "[T]he purpose of a *Terry* stop is to allow

Page 4 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

the officer to pursue his investigation without fear of violence." *United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) (internal quotation marks and alteration omitted). The Ninth Circuit has repeatedly held that handcuffing and the display of weapons during a *Terry* stop do not automatically convert the stop into an arrest when justified by officer safety. *United States v. Miles*, 247 F.3d 1009, 1012-13 (9th Cir. 2001); see also *United States v. In*, 124 F.4th 790, 797-98 (9th Cir. 2024) (finding officers did not conduct *de facto* arrest by handcuffing suspect during investigation). In *Miles,* the Ninth Circuit evaluated similar facts and stated,

> We conclude that the initial stop here did not amount to an arrest. Just minutes before spotting Miles, the officers had received a report of shots fired at a residence. Miles was the first and only person the officers came across who fit the description; he fit the description in all respects, and he was found within blocks of the reported crime. Moreover, Miles's relatively close proximity to two other individuals raised concerns for their safety as well as that of the officers, who were outnumbered. Approaching Miles with guns drawn, ordering him to his knees, and handcuffing him was, without doubt, "intrusive and aggressive police conduct." But we reject Miles's contention that the officers could not detain him in that manner absent evidence that Miles was armed. The officers had a report of gunfire and had legitimate safety concerns. They made an on-the-spot assessment of the restraint necessary to control the situation. Like the district court, we conclude that their actions were reasonable.

*Miles,* 247 F.3d at 1013 (internal citations omitted).

Sgt. Miller deployed his rifle because the call involved a possible gun threat and he explained that the weapon provided officer safety due to the tactical advantages in range and accuracy. *Ex. 3*, p. 31 line 21- p. 32 line 14. Gilliam complied with all commands, was handcuffed for safety, and later received double cuffs to alleviate discomfort while the investigation occurred. *Ex. 1,* p. 4; *Ex. 2*, p. 6; *Ex. 3*, pp. 13-14.

> Handcuffs may be used during a *Terry* stop under several specific circumstances, including 1) "when it is a reasonable response to legitimate safety concerns on the part of the investigating officers," 2) when "police have information that the suspect is currently armed," or 3) when "the stop closely follows a violent crime." The

Page 5 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

Ninth Circuit also directs courts to consider "'The specificity of the information that leads the officers to suspect that the individuals they intend to question are the actual suspects being sought' and 'the number of police officers present.'"

*United States v. Devonn Deshea Kinsey*, 952 F. Supp. 2d 970, 973 (E.D. Wash. 2013) (internal citations omitted); *see also In,* 124 F.4th at 795 (providing similar analysis).

Here, handcuffs were justified because dispatch and the complainant reported that Gilliam was armed and because Gilliam arrived angry and was intending to recoup money from the complainant on behalf of his girlfriend. Furthermore, despite the initial high volume of law enforcement response, only two officers were handling the scene throughout the investigation. During that time, Simon Gayles's truck was being towed (*Ex. 1*, p. 4), his brother had left the scene, there were witnesses to interview, and there was one individual who was videoing and borderline interfering with the investigation. *Ex. 1*, p. 4; *Ex. 3*, pp. 14-15. Detaining Gilliam in the car, while loosely double-cuffed, helped secure the scene and facilitate a prompt investigation.

Accordingly, the detention was a lawful *Terry* stop.

### B.  The Duration of Detention was Also Reasonable.

A *Terry* stop may last as long as necessary to confirm or dispel suspicion. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). In *Sharpe,* the Supreme Court rejected a *per se* 20-minute detention limit for a permissible *Terry* stop, stating such a rule is "clearly and fundamentally at odds with our approach in this area." *Id.* at 686. It further stated,

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative

Page 6 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

means by which the objectives of the police might have been accomplished. But "[the] fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

*Id.* at 687 (internal citations omitted).

Sgt. Miller actively investigated throughout the encounter, interviewing Gayles and Straub, getting Gilliam's version of events, attempting contact with Gayles's mother, and searching the area for weapons. *Ex. 3*, p. 9 line 19 - p. 14 line 25. At bottom, Oregon's menacing statute, ORS 163.190, criminalizes intentionally placing another in fear of imminent serious physical injury, with or without a weapon. Miller's continued investigation after finding no gun was therefore legally reasonable.

Gilliam testified that even though these steps may be reasonable, he still believes that Sgt. Miller spent 3-5 minutes too long while interacting with a person standing nearby and who was videoing the investigation. Sgt. Miller explained that he engaged her due to community caretaking, among other reasons. This three-to-five-minute period is the ultimate basis for Plaintiff's claim. *Ex. 2,* pp. 9-10. It ignores the reality of police work in this context and fails to create a Constitutional claim under *Sharpe*, where 20 minutes was acceptable during continued investigation.

Once Sgt. Miller determined that probable cause did not exist, he released Gilliam. *Ex. 3*, p. 21 lines 15-22; *Ex. 1*, p. 4. These facts foreclose any claim of unlawful arrest.

**II. The Equal Protection Claim Fails Because There Is No Evidence of Discriminatory Intent.**

To prevail on an Equal Protection claim, a plaintiff must show that the defendant acted with purposeful discrimination. *Washington v. Davis*, 426 U.S. 229, 239-42 (1976); see

Page 7 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

*Jackson v. Hill*, 128 F. App'x 595, 597 (9th Cir. 2005) (citing *Davis*). Gilliam cannot meet this standard. Sgt. Miller testified that he does not recall race being mentioned in the dispatch call, and there is no indication that race influenced his decisions whatsoever. *Ex. 3,* p. 5 lines 18-21. Sgt. Miller followed standard procedures, treated Gilliam respectfully, and ultimately referred Gayles - the complainant - for possible prosecution for filing a false report. *Ex. 3,* p. 16 lines 1-19. Gilliam agreed that law enforcement was not rude and he actually considered their actions "gentle." *Ex. 2*, p. 7 lines 1-18.  These actions are inconsistent with discriminatory intent and defeat Plaintiff's claim.

Plaintiff may claim there is circumstantial evidence of racial disparities in the City of Coburg, leaving a jury question for resolution at trial. However, the only admissible evidence of race is simply the fact that a White officer detained a Black suspect. It warrants attention that this is not a case of mistaken identity; Sgt. Miller detained the correct suspect. The Supreme Court has held that a disparate impact alone is insufficient to prove an Equal Protection violation; plaintiffs must show a discriminatory purpose. *Washington v. Davis* establishes that a law or policy with a "disproportionately adverse effect" requires proof that officials intended the discriminatory outcome. 426 U.S. at 242. No such evidence exists here.

There is no evidence Sgt. Miller deviated from policy, there are no racially charged statements, and race is merely an incidental fact in this case. Accordingly, the equal protection claim fails as a matter of law. Summary judgment should be granted.

### III. Qualified Immunity Bars Both Claims

Qualified immunity shields government officials unless their conduct violates clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Ashcroft v. al-Kidd*, 563 U.S.

Page 8 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

731, 741 (2011). No clearly established precedent forbids brief handcuffing and rifle display during an investigation of an armed-threat call. On the contrary, Ninth Circuit cases such as *Miles* and *In* confirm that such measures are permissible during *Terry* stops when officer safety is at stake. Similarly, there is no clearly established law holding that an officer violates Equal Protection by neutrally investigating a 911 call involving a potentially armed suspect, who happens to be Black, without rude conduct or arrest, and by referring the White complainant for prosecution. The mere allegations that Coburg is not racially diverse does not inject racial bias into every law enforcement decision. *See, ECF No. 1,* ¶ 13 (alleging racial composition in Coburg). Qualified immunity therefore bars both claims.

## CONCLUSION

The undisputed record shows that Sgt. Miller conducted a lawful *Terry* stop, acted without discriminatory intent, and is entitled to qualified immunity. The Court should grant summary judgment in favor of Sgt. Miller on all claims.

Dated this 12th day of January, 2026.

>  */s/ Casey Murdock*
>  Casey S. Murdock, OSB No. 144914
>  *Of Attorneys for Defendant*

Page 9 - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**:

>Marianne G. Dugan
>Civil Liberties Defense Center
>1711 Willamette Street, Suite 301, #359
>Eugene, OR 97401
>mdugan@cldc.org

☒ by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice.

☐ by mailing to said attorneys a copy thereof, certified by me as such, contained in a sealed envelope, with postage paid, addressed to said attorneys at said attorneys' last known address and deposited in the post office at Medford, Oregon, on the date set forth below.

☐ by emailing said attorney a copy thereof, certified by me as such, addressed to said attorney at said attorney's last known email address as indicated above.

Dated this 12th day of January 2026.

>*/s/ Casey Murdock*
>Casey S. Murdock, OSB No. 144914
>*Of Attorneys for Defendant*

Page 10 - **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333