CASEY S. MURDOCK, OSB NO. 144914
Murdock@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO, & MCGOVERN, P.C.
2592 East Barnett Road
Medford, OR 97504
Telephone:    (541) 779-2333
Facsimile:    (541) 779-6379
        Of Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| ADAM GILLIAM, | Case No.: 6:25-cv-00492-AP |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| DANIEL C. MILLER, | **FRCP 56; LR 56; LR 7** |
| Defendant. | **(Oral Argument Requested)** |

## REPLY

Defendant Daniel C. Miller submits this Reply in support of his Motion for Summary Judgment. *ECF No. 14*. Plaintiff's Response (*ECF No. 17*) does not identify evidence sufficient to create a genuine issue of material fact as to: (1) whether the detention violated the Fourth Amendment, (2) whether discrimination motivated the stop or detention, or (3) whether clearly established law prohibited Sgt. Miller's actions. The undisputed record, including Plaintiff's own

Page 1 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

deposition, Sgt. Miller's deposition, the body-camera footage, and the contemporaneous police reports, establishes that summary judgment should be granted.

## LEGAL MEMORANDUM

While Plaintiff may have been unjustly accused of a crime by the complainant, that fact does not render Sgt. Miller's response inappropriate - let alone unconstitutional.

It is undisputed that Sgt. Miller was justified in drawing his firearm. It is undisputed that there was probable cause to believe a significant, violent offense involving a firearm had occurred. And it is undisputed that the wallet Plaintiff was holding when officers arrived belonged to Simon Gayles. *ECF No. 13 (Ex. 1),* p. 4. Plaintiff nevertheless contends that he should have been released once officers failed to locate a firearm on his person and that, at minimum, Sgt. Miller should have removed his handcuffs during the investigation.

The law does not support Plaintiff's position. Sgt. Miller was justified in handcuffing Plaintiff during this relatively brief detention while investigating felony firearm and menacing charges, among others. Moreover, officers double-cuffed Plaintiff to minimize discomfort, released him immediately upon determining that probable cause was lacking, and treated him "gentl[ly]." *ECF No. 13 (Ex. 2),* p. 7. There is no evidence that Plaintiff was uncomfortable or distressed after officers adjusted the handcuffs.

Sgt. Miller's conduct was reasonable and fully consistent with constitutional requirements.

**I.      Sgt. Miller Continued His Investigation Until No Probable Cause Existed, Which Occurred Well After Determining Plaintiff Did Not Possess a Firearm.**

Plaintiff argues the absence of a firearm eliminated any officer-safety justification for continued investigation and detention. However, Sgt. Miller was responding to a 911 call reporting

**Page 2 - DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

an armed threat and menacing, which courts repeatedly hold justifies the use of firearms, handcuffs, and other high-risk stop measures. *United States v. Miles*, 247 F.3d 1009, 1012-13 (9th Cir. 2001); *see also United States v. In*, 124 F.4th 790, 797-98 (9th Cir. 2024). Those cases hold that officers may continue safety procedures even after an initial frisk, where the investigation is ongoing, witnesses must be located, or circumstances remain unstable. Tellingly, Plaintiff never once confronts the analysis or holding in *Miles*, apparently attempting to ignore adverse precedent.

Here, when it was determined Plaintiff was holding Gayles' wallet, rather than a firearm, officers had not yet interviewed witnesses. Gayles, the reporting party, ran from the scene and was known to be erratic. A bystander interfered and had to be managed. Adding to the fray, Gayles' tow-truck issue and other distractions required securing the suspect to continue safely investigating with minimal manpower. *See generally, ECF No. 13 (Ex. 1).*

Plaintiff cites *Ortiz-Hernandez* for the proposition that officers must release the suspect once probable cause dissipates. *ECF No. 17,* p. 13. Yet, Sgt. Miller did not disregard dissipating facts and continue an arrest anyway; instead, he consulted Sgt. Lee, determined probable cause to arrest was lacking, and released Plaintiff. That sequence is consistent with the principle that officers must terminate arrest-level restraint when arrest-level cause is no longer present.

To that point, this is not a single-crime investigation. As Sgt. Miller explained, there were more than gun charges under consideration while he investigated. *ECF No. 13 (Ex. 3),* p. 20. Even assuming probable cause for a weapons offense dissipated early, the record shows continued investigation into the reported threatening conduct and prompt release once Sgt. Miller determined probable cause to arrest was lacking, satisfying the dissipation principles Plaintiff invokes from *Ortiz-Hernandez.*

Page 3 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

### A. Cooperation Does Not Eliminate Probable Cause

Plaintiff emphasizes that he should have been released from investigative detention because he was cooperative. *See ECF No. 17,* p. 12 (citing *Lambert*). But cooperation on its own does not eliminate probable cause or officer-safety concerns during an armed-suspect call. If the crime occurred as Gayles reported, Plaintiff would be arrested and charged, regardless of any cooperation during the investigation because he threatened someone's life with a weapon. While cooperation is appreciated, it is not a method to avoid detention or arrest and is certainly not a relevant component in determining probable cause.

In the context of probable cause to arrest, suspect cooperation is about as valuable as explanations of innocence and neither necessarily eliminate probable cause once it has been established. Probable cause is determined based on the totality of the circumstances and is an objective standard that does not require absolute certainty of guilt but rather a reasonable belief that an offense has been committed and that the suspect committed it.

Under Oregon law, probable cause exists when there is a "substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS § 131.005. This standard is consistent with the Fourth Amendment, which requires probable cause for arrests to ensure protection against unreasonable seizures.

Responding officers are not required to eliminate all possible lawful explanations for conduct that appears to violate the law. For example, in *Nordlund v. Eubank, No. 3:20-cv-00085-JMK,* 2021 U.S. Dist. LEXIS 242753 (D. Alaska Dec. 21, 2021), the court noted that law enforcement officers are not constitutionally required to independently investigate every claim of innocence or accept a suspect's explanation as true if probable cause already exists. *Id.* at *9. If

Page 4 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

plausible explanations do not negate probable cause, nor does mere cooperation.

Here, Sgt. Miller possessed probable cause for various crimes on arrival. *ECF No. 13 (Ex. 3),* p. 7, p. 19. While Plaintiff was cooperative, it did not serve as a substitute for witness statements and scene evaluation. It therefore did not eliminate probable cause.

**B. The Detention Was a Lawful *Terry* Stop That Was Reasonable in Scope and Duration.**

Sgt. Miller articulated a reasonable basis for his detention and investigation. Plaintiff did not challenge the detention, until the last 3-5 minutes. *ECF No. 13 (Ex. 2),* pp. 9-10. Plaintiff even admits that the evidence was not conclusive, but merely "increased" in volume while the investigation continued. *ECF No. 17,* p. 11. If probable cause existed, but the evidence remained inconclusive, it appears the parties agree that further investigation could be warranted. There is no basis for the claim.

A *Terry* stop's duration is evaluated by whether police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly," and courts should not indulge in unrealistic second-guessing of officers in a developing situation. *United States v. Sharpe*, 470 U.S. 675, 687 (1985).[1]

Plaintiff relies on *Chinaryan* and similar cases, but those cases involve situations where officers ignored obvious exculpatory evidence. Here, the record shows Sgt. Miller pursued the core investigative steps that *Sharpe* contemplates. Officers acted diligently by interviewing all known or potential witnesses, trying to locate Gayles' brother who ran off, attempting contact with

---

[1] While Plaintiff cites to *Sharpe* for the factors it sets forth, he avoids the rest of the case analysis, which undermines his claims. *ECF No. 17,* p. 10.

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

the stepmother, verifying facts, coordinating, and addressing safety concerns. The investigation occurred in an unfolding, evolving environment with distractions such as tow trucks and entirely inconsistent statements on critical facts such as the presence of a firearm and Plaintiffs' demeanor. Plaintiff asks this court to do what *Sharpe* counsels against, engaging in "unrealistic second-guessing." 470 U.S. at 686.

Critically, one of the few consistencies between Plaintiff's and Gayles' version of events actually supported the potential for a violent crime: Plaintiff arrived as Gayles house while upset, so that he could retrieve his girlfriend's money. *ECF No. 13 (Ex. 2)*, p. 8.[2] Plaintiff was told that Gayles had blown the money on drugs, giving him yet another reason for an explosive result. And, surprisingly, Plaintiff was standing there holding Gayles' wallet while asserting that he never made any threat or used any force to gain possession of it. Despite those facts, the investigation only lasted approximately one hour and falls well within permissible limits for a firearm-related menacing call where Plaintiff conceded the motive for the crimes.

Plaintiff's own deposition narrows the alleged constitutional defect to "three, four, five minutes" after the neighbor interview, during which Sgt. Miller was talking to someone else while on the way back to his car to release Plaintiff (the filming bystander).[3] On this record, that short interval is precisely the kind of hindsight critique *Sharpe* warns against: the question is not whether some alternative sequence existed, but whether police acted unreasonably in failing to recognize or pursue an alternative means of investigating.

---

[2] Plaintiff coincidentally was in possession of Gayles' wallet.
[3] The self-proclaimed "professional protestor" who "knows the Constitution inside-and-out" never expressed any concerns about Sgt. Miller talking to her while he "should" be releasing Plaintiff from the patrol car. *ECF No. 18 (Ex. C)*, at 17:51:30 – 17:51:50.

Page 6 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

> A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which objectives of police might have been accomplished. But "[the] fact that protection of public might, in abstract, have been accomplished by 'less intrusive' means does not, by itself, render search unreasonable."

*Sharpe*, 470 U.S. at 676.

The video evidence and the police report (*ECF No. 13* (Ex. 1)) both corroborate that this slight detour was effective in de-escalating the situation with the First Amendment bystander, who called Sgt. Miller a "scholar and a gentleman" after noting he is the first police officer that she had ever shaken hands with. *ECF No. 18 (Ex. C), at 17:59:40.* These are the kind of positive interactions between advocates for the constitution and law enforcement that should be encouraged, rather than criticized and weaponized.

Critically, the detention ended with release once Sgt. Miller and Sgt. Lee determined probable cause to arrest was lacking. That is consistent with *Sharpe's* focus on diligence and prompt termination once the investigation no longer supports continued detention. *See also, Thomas v. Or. State Police,* 656 F.App'x 273 (9th Cir. 2016) (granting judgment as a matter of law to OSP when detaining suspect for 40-45 minutes during investigation); *Picray v. Heeb*, 544 F. App'x 743 (9th Cir. 2013) (affirming summary judgment to defendant for 40-minute detention).[4]

Under *Sharpe*, no reasonable jury could find a Fourth Amendment duration violation based on Plaintiff's "3-5 minutes" theory where the record shows ongoing investigative steps and release upon a no-probable-cause determination.

---

[4] This is a nonprecedential opinion.

FROHNMAYER, DEATHERAGE, JAMIESON, MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

## II.  No *De Facto* Arrest Occurred Because Officer-Safety Measures Remained Justified.

Ninth Circuit precedent establishes that approaching with guns drawn, ordering a suspect to the ground or knees, and handcuffing does not automatically convert an investigatory stop into an arrest when officers are responding to a report involving gunfire or an armed threat and have legitimate safety concerns. *Miles,* 247 F.3d at 1012-13. The court also recognized that handcuffing during an investigation can remain within the investigatory-detention framework depending on the totality of circumstances. *Id.*

Sgt. Miller responded to a dispatch report of an armed subject threatening the complainant at a known location, he observed Plaintiff holding a black object that could not be identified at distance, and deployed a long rifle due to the emergent nature of the call. Officers held Plaintiff at gunpoint until additional officers arrived, then conducted a cursory search that yielded no weapons. He was then cuffed during the multi-witness investigation with minimal law enforcement on scene and was promptly released thereafter.

Those facts align with the safety-driven rationale recognized in *Miles*. In *Miles*, officers responded to a report of a man wearing an oversized jacket and riding a bicycle who had fired a gun at a residence. The officers located a suspect matching the description near a bicycle and approached him with guns drawn, ordered him to kneel, and handcuffed him. The court concluded that these actions were reasonable and did not constitute an arrest because the officers had a report of gunfire, legitimate safety concerns, and made an on-the-spot assessment of the necessary restraint to control the situation. *Miles*, 247 F.3d at 1013.

The court emphasized that the use of intrusive means, such as holding a suspect at gunpoint, requiring them to kneel or lie down, and handcuffing, is permissible during a *Terry* stop when

Page 8 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

officers have information suggesting the suspect is armed or the stop closely follows a violent crime. *Id*. This principle aligns with the broader understanding that such measures are reasonable responses to legitimate safety concerns and do not automatically escalate a stop into an arrest. The standard holds true whether there was actually gunfire or not; there was reported gunfire, just as here there was a reported threat on Gayles' life with a firearm.

Plaintiff emphasizes that he was cooperative and that the object was a wallet. But *Miles* rejects the notion that officers must have confirmed the suspect is armed before using these safety measures when the call itself reports a gun-related threat and the scene is still being stabilized. And the record reflects Sgt. Miller adjusted restraints by adding a second set of handcuffs after Plaintiff complained of shoulder pain, which undercuts any claim of gratuitous force.

Plaintiff then cites *Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996) for the proposition that cooperation creates a sliding scale for this court's evaluation of whether he was arrested. But that case involved a minor offense, cooperative suspects with no violent allegations, and no report of weapons. By contrast, in this case, officers were responding to a violent felony call involving alleged threats to kill someone, Gayles' report was specific, contemporaneous, and placed Plaintiff as armed and menacing, Plaintiff's own report for his reason being at the location supported Gayles' theory, and the scene remained unstable until witnesses were located and interviewed. This is not a situation where there are unarmed children (*Nicholson* cited at *ECF No. 17,* p. 13), a random viewing of someone walking with a fake gun (*Sialoi* cited at *ECF No. 17,* pp. 9-10), or other minimizing facts. Significant charges remained under review throughout the investigation.

These conditions meet every factor recognized in *Miles*, *In*, and *Guzman-Padilla* for a continued *Terry* stop. Under *Miles* and the totality-of-circumstances, the rifle display, handcuffing,

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

and patrol-car placement did not, by themselves, convert this armed-threat investigatory detention into an arrest.

## III.  Plaintiff Cannot Establish Discriminatory Intent, as Required For an Equal Protection Claim.

Plaintiff cites inadmissible records as the sole basis for the argument that Sgt. Miller is racist. That is, indisputably, Plaintiff's argument – Sgt. Miller is racist because Coburg does not have significant racial diversity. Not only is it unauthorized, but it is also offensive, and should be strongly rejected. To support his claim that Sgt. Miller is a racist, he merely refers to unauthenticated websites that are not subject to judicial notice for certain "statistics" on Coburg. Courts take judicial notice of publications "introduced to 'indicate what was in the public realm at the time, not whether the . . contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Here, Plaintiff requests judicial notice of websites and articles, not to show the state of those websites and articles at the time of the incident, but to show the truth of their content as it relates to Coburg demographics and arrest statistics.  Those arguments are inadmissible and fail to support a claim.[5]

### A.  There Is No Evidence of Purposeful Discrimination

An Equal Protection claim requires proof of purposeful discrimination, not merely disparate impact. At summary judgment, a plaintiff must produce sufficient evidence to permit a reasonable trier of fact to find that the officer's decisions were racially motivated; the mere fact

---

[5] Ironically, what can be judicially noticed is the geographical location of Coburg right off Interstate-5 where extensive traffic from outside the City comes through. This clearly has a profound impact on traffic stop and arrest statistics.

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

that the plaintiff is Black, the officer is White, and the parties dispute the legality of the detention is insufficient.

Plaintiff relies on Coburg (supposed) demographics and stop statistics along with the fact that Gayles (White) was uncuffed earlier than Plaintiff. But Plaintiff's record does not identify any evidence that race motivated Sgt. Miller's decision(s). There are no racial statements, no evidence dispatch included race (and Sgt. Miller testified he does not recall dispatch mentioning race), and no evidence of race-based decision-making criteria.

Under *Davis* and *Bingham*, statistics and disparate outcomes do not substitute for evidence of discriminatory purpose in the challenged decision. And the record contains obvious race-neutral explanations for differential treatment: Gayles was the complainant at the outset, while Plaintiff was the reported armed suspect. Sgt. Miller investigated both accounts and ultimately recommended forwarding Gayles for possible initiating a false report. That sequence is inconsistent with an inference that Sgt. Miller intentionally favored Gayles because of race. Moreover, they show nothing about Sgt. Miller's purpose - the constitutionally required element. *Washington v. Davis*, 426 U.S. 229, 239–42 (1976) ("the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose"); *Bingham v. City of Manhattan Beach,* 341 F.3d 939, 948 (9th Cir. 2003).

Even if Plaintiff's statistics are correct, they still do not create a triable issue of fact. Those statistics have nothing to do with Sgt. Miller. They show nothing regarding his credentials, his work history, his personal beliefs, or his civil service. This argument presents precisely the kind of disallowed speculation and complete guesswork the Supreme Court warned against employing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Page 11 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

Plaintiff's Equal Protection claim fails as a matter of law because the record does not permit a reasonable inference of purposeful discrimination as required by *Davis* and *Bingham*.

**B. Plaintiff's Comparison to Gayles' 19-Minute Cuffing is Materially Flawed.**

Acknowledging the thin thread for his claim, Plaintiff pivots and argues that, "A reasonable jury could find that the manner in which Defendant treated the white, unreliable complainant – cuffed for only 19 minutes despite clearly making a false report – was unreasonably disparate compared to holding Plaintiff for over an hour cuffed behind his back in a locked police car." *ECF No. 17*, p. 16. This is, again, a disparate impact sort of argument devoid of intent and the explanation for the difference in treatment is glaring and insufficient to create a triable issue.

Gayles was cuffed for a shorter duration because he was the reporting party, he was not a suspect once officers stabilized the scene, and his vehicle was being repossessed, requiring him to retrieve belongings. The assertion that he "clearly made a false report" was not and could not be evident until the investigation concluded. The final witness may corroborate Gayles' report, or an officer may discover a firearm in a bush while walking past. Perhaps most importantly, Gayles was never alleged to be a suspect of any crime based on Plaintiff's own statements at the scene.

Plaintiff, by contrast, was the suspect in a violent felony investigation and remained detained only until officers completed their interviews.

Equal Protection requires proof of discriminatory intent, rather than mere differences in timing. Plaintiff provides none.

**IV. QUALIFIED IMMUNITY BARS BOTH CLAIMS.**

Even if the Court finds a constitutional question, Sgt. Miller is entitled to qualified immunity. As of the incident date, Ninth Circuit authority recognized that officers responding to

Page 12 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

reported gun incidents may use guns drawn, order a suspect to their knees, and handcuff during an investigatory stop based on legitimate safety concerns. The courts further stated that detention can continue while the investigation is ongoing. *Thomas,* 656 F.App'x 273 (9th Cir. 2016); *Picray v. Heeb*, 544 F. App'x 743 (9th Cir. 2013). That authority cuts against any claim challenging the legality of Sgt. Miller's response to an armed-threat call and this supposed 3–5-minute entitlement.

Plaintiff's own framing of the issue that the constitutional violation is essentially a few minutes of continued detention after the final neighbor interview underscores why clearly established law is not met here. It bears repeating that *Sharpe* itself cautions against unrealistic second-guessing of on-scene sequencing in developing situations.

Finally, Sgt. Miller released Plaintiff once it was determined that probable cause to arrest was lacking, which further supports that Sgt. Miller's conduct was not clearly established as unlawful in this context. Plaintiff's cited authority underscores that Sgt. Miller's conduct was constitutional, rather than the other way around. *See ECF No. 17,* p. 17 ("We held in *United States v. Bautista,* 684 F.2d 1286 (9th Cir. 1982), that the use of handcuffs was justified during a *Terry* stop to ensure officer safety from suspected violent criminals and to prevent their escape.")

Plaintiff cannot cite any case holding that officers violate the Fourth Amendment by using handcuffs,[6] seating a suspect in a patrol car, and displaying weapons during an investigation of an alleged armed threat, where the investigation remains active and the scene unstable. The citation to cases for general principles on Fourth Amendment rights on extremely different facts lends no support to his position.

---

[6] Plaintiff argued in his brief that he was in "severe pain", but that is unsupported by any evidence in the record and should be disregarded. *ECF No. 17,* p. 2.

Page 13 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

To the contrary, Ninth Circuit precedent - *Miles*, *In*, *Guzman-Padilla* - expressly approves such measures. Qualified immunity independently supports summary judgment because the cited authority does not clearly establish that Sgt. Miller's conduct during an armed-threat investigation with ongoing witness interviews and scene management was unlawful beyond debate.

Similarly, to the Equal Protection claim, there is no case holding that a White officer who investigates a Black suspect in response to a violent 911 call, treats the suspect respectfully, releases him without arrest, and refers the White complainant for prosecution has violated clearly established Equal Protection rights. Qualified immunity applies.

## CONCLUSION

Plaintiff has not shown a genuine dispute of material fact. The detention was a lawful *Terry* stop, no discriminatory intent existed, and Sgt. Miller is entitled to qualified immunity. Sgt. Miller respectfully requests that the Court grant summary judgment on all claims.

Dated this 3rd day of March, 2026.

/s/ Casey Murdock
Casey S. Murdock, OSB No. 144914
*Of Attorneys for Defendant*

Page 14 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** on:

> Marianne G. Dugan
> Civil Liberties Defense Center
> 1711 Willamette Street, Suite 301, #359
> Eugene, OR 97401
> mdugan@cldc.org

☒    by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice.

☐    by mailing to said attorneys a copy thereof, certified by me as such, contained in a sealed envelope, with postage paid, addressed to said attorneys at said attorneys' last known address and deposited in the post office at Medford, Oregon, on the date set forth below.

☒    by emailing said attorney a copy thereof, certified by me as such, addressed to said attorney at said attorney's last known email address as indicated above.

Dated this 3rd day of March, 2026.

> _/s/ Casey Murdock_____
> Casey S. Murdock, OSB No. 144914
> _Of Attorneys for Defendant_

Page 15 - **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333